[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-14038
Non-Argument Calendar
_____

D.C. Docket No. 4:15-cr-00027-WTM-GRS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LEONARDO DIVINCI LARCK,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia
_____

(July 25, 2017)

Before JORDAN, ROSENBAUM, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Following a jury trial, Defendant Leonard Larck appeals his convictions for possession of a firearm by a convicted felon, possession of controlled substances with intent to distribute, and possession of a firearm in furtherance of a drug trafficking crime.  On appeal, Defendant argues that the district court plainly erred by admitting an unauthenticated recording of a telephone call he made while incarcerated.  After careful review, we affirm.

## I.    BACKGROUND

The evidence produced at trial showed that, on September 9, 2014, law enforcement officers and emergency personnel responded to an accident involving a marked police car and another vehicle.  When emergency personnel arrived at the scene, Defendant was lying on his stomach outside of the vehicle involved in the crash.  While moving Defendant from his stomach to his back, a bag containing nine .45-caliber bullets fell out of the pocket of Defendant's shorts.  Defendant also had $2,652 in cash in his shorts.  In Defendant's vehicle, officers found a black semiautomatic pistol on the floorboard near the brake pedal.  A subsequent search of the vehicle revealed several rental car agreements (one of which had the name Wykeisha Joyner), a scale, and plastic bags containing heroin, cocaine base, and caffeine.

A federal grand jury subsequently charged Defendant with one count of being a felon in possession of a firearm, 18 U.S.C. §§ 922(g)(1) & 924(a)(2), two

2

counts of possession of controlled substances with intent to distribute, 21 U.S.C. § 841(a)(1), and one count of possession of a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c).[1] Defendant pled not guilty and proceeded to trial.

At trial, the Government presented testimony from an eyewitness to the crash, the EMT who provided medical care to Defendant, the police officers who responded to the accident and those who conducted the subsequent search of Defendant's vehicle, and the forensic scientist who tested the controlled substances found in the vehicle.

After the Government rested its case, Defendant called his sister, Wykeisha Joyner, to testify on his behalf. Testifying that she had rented the car that was involved in the accident, Joyner stated that she had let her cousin use the car and that he had then loaned the car to Defendant. She further stated that the firearm and ammunition belonged to her. On cross-examination, Joyner asserted that she had bought the gun for protection the night before the accident and had put the gun in the car. Because she had too much to drink that night, she asked her cousin to drive her to work the next morning. She acknowledged that when she was initially interviewed, she told officers that the firearm was a handgun but she did not tell them the make or the caliber of the firearm. When asked if she had heard the

---

[1] Defendant was charged with an additional count of possession of controlled substances with intent to distribute (Count 4), but that count was later dismissed by the Government.

3

prosecutor state during opening arguments that this case involved a .45-caliber firearm, Joyner stated that she left the courtroom during opening arguments.

To rebut Joyner's testimony, the Government requested permission to play a recorded phone call made by Defendant while he was in jail. At sidebar, the Government told the district court that the phone call would show that Defendant was trying to have someone "come and say that they possessed the gun and that they possessed the bullets and that the drugs were theirs and he didn't know anything about it." The district court permitted the Government to play the phone call. Before playing the recording, the Government stated: "This is a call from Mr. Larck in the jail on September 17, 2014, at 2:43 P.M." The Government then played the recording without any objection from Defendant.

The jury ultimately returned a guilty verdict against Defendant on all counts and the district court sentenced Defendant to 240 months' imprisonment. This appeal followed.

## II.    DISCUSSION

Defendant argues that the district court committed reversible error when it admitted without proper authentication his recorded jailhouse phone call in which, while awaiting trial, he tried to find someone who would "come and say that they possessed the gun and that they possessed the bullets and that the drugs were theirs and he didn't know anything about it." This evidence became particularly

4

pertinent after Defendant's sister testified largely to just that fact. Defendant's sister testified that the car Defendant was driving was her rental car, that the firearm in the car and the ammunition in Defendant's pocket was hers, that she loaned the car to her cousin, and that he let Defendant drive the car at the time of the crash.

As noted, the Government did not authenticate the call with the testimony of someone who could verify the source of the recording. Instead, prior to playing the taped call, the prosecutor simply indicated that this was "a call from Mr. Larck in the jail on September 17, 2014, at 2:43 P.M." Defendant did not object to admission of the testimony. Now, however, he argues that his conviction should be reversed because the Government failed to properly authenticate the call.[2]

In order to be able to claim error based on a court's allegedly erroneous ruling to admit or exclude evidence, a party must timely object to admission of that evidence. Specifically, Rule 103 provides:

> (a) **Preserving a Claim of Error**. A party may claim error in a ruling to admit or exclude evidence only if the error affects a substantial right of the party and:
>
> (1) if the ruling admits evidence, a party, on the record:
>
> (A) timely objects or moves to strike; and

---

[2] He also asserts, as a separate error, the prosecutor's explanatory statement prior to playing the recorded phone call. We, however, construe the prosecutor's statement as simply part of Defendant's inadequate-authentication argument.

(B) states the specific ground, unless it was apparent from the context. . . .

Fed. R. Evid. 103(a).

Because Defendant did not raise either of these objections before the district court, our review is limited to plain error. *See United States v. Humphrey*, 164 F.3d 585, 587 (11th Cir. 1999) ("The appropriate standard of review, given [Defendant's] failure to object in the district court . . . is plain error."). To constitute plain error, "there must be (1) an error (2) that is plain and (3) that has affected the defendant's substantial rights; and . . . (4) the error 'seriously affects the fairness, integrity or public reputation of judicial proceedings.'" *United States v. Madden*, 733 F.3d 1314, 1320 (11th Cir. 2013) (quotations omitted) (alteration accepted). "[T]he plain error standard is a difficult one to meet," and "when examined in the context of the entire case it must be so obvious that failure to notice it would seriously affect the fairness, integrity and public reputation of judicial proceedings." *United States v. West,* 898 F.2d 1493, 1498 (11th Cir. 1990) (quotations omitted).

Given the Government's concession that the admission of the recorded phone call without proper authentication constituted an error that was plain, as set out in the first two prongs of the plain-error test, we will assume that to be the case for purposes of this appeal. Proper authentication of a recording requires the Government to "establish that it 'is an accurate reproduction of relevant sounds

6

previously audited by a witness.'"  *United States v. Reeves*, 742 F.3d 487, 501 (11th Cir. 2014) (quotations omitted); Fed. R. Evid. 901(a) (stating that in order to satisfy the authentication requirements, the proponent "must produce evidence sufficient to support a finding that the item is what the proponent claims it is" and, in particular, the Government has the burden of showing the accuracy of the recording equipment, the identification of the speakers, and that relevant portions of the recording were not altered or deleted).

But even assuming that it should have been obvious to the district court that its failure to *sua sponte* exclude admission of this unobjected-to-evidence constituted error, Defendant still founders on the third and fourth prongs of the plain-error test.  As to the third prong of the test, Defendant cannot show that his substantial rights were affected.  To meet this prong of the test, a defendant must show that the error "affected the outcome of the district court proceedings."  *See United States v. Rodriguez*, 398 F.3d 1291, 1299 (11th Cir. 2005) ("In regard to this third prong, it is the defendant rather than the government who bears the burden of persuasion with respect to prejudice." (quotations omitted) (alterations accepted)).

Yet, Defendant does not assert that it was not his voice on the call, nor does he contend that the Government would have been unable to properly authenticate the recording, had Defendant simply alerted the prosecution to his objection to the

Government's failure to do so.  To the contrary, Defendant acknowledges that the Government had a witness readily available to authenticate the call.  Thus, we must conclude that had Defendant voiced any objection, the Government would have simply called that witness to the stand and the recording would then have been properly authenticated.

Even without this recorded phone call suggesting that Defendant had been attempting to suborn testimony that the firearm and ammunition were not his, his sister's testimony was quite shaky.  As the only defense witness, Joyner testified that she had never owned a firearm before, but had happened to purchase a firearm the night before the accident because of threats she had received.  Yet, despite these threats and her purported desire to protect her family, Joyner left the gun in a rental car overnight that she loaned to someone else.  Moreover, Joyner was unable to provide any specific details about the person from whom she purchased the gun. She also had difficulty responding when asked by the Government whether she had originally told interviewing officers specifics about the gun, or whether instead her more detailed trial testimony about the make and model of the firearm was possible because she had been present during opening arguments.

Further, Joyner claimed ownership of only the gun and ammunition.  Yet, drugs were also found in the car at the time Defendant was arrested.  Plus, along with a large sum of cash, the bag of bullets to which Joyner claimed ownership

8

was found in Defendant's pockets.  Defendant's direct possession of bullets bolstered an inference that it was he who possessed the gun; the large sum of cash tied him to the drugs; and the jury could infer that a person who is dealing drugs might well seek the protection of a weapon.  *Cf. United States v. Thomas*, 242 F.3d 1028, 1032 n.5 (11th Cir. 2001) (noting that large sums of cash can be an indicator of drug trafficking).  Indeed, Defendant was the sole occupant of the vehicle where the drugs, drug paraphernalia, and the firearm were found.

Finally, the usefulness of the recording for the Government's purposes appears to have been limited by its poor sound quality.  When the Government initially played the recording, the district court stated that it could not hear it. Defense counsel said essentially the same thing during closing arguments, noting that the recording was difficult to understand.  Further, the jury also seems to have a hard time making out the conversation because it asked for a transcript during deliberations, and was told that one was not available.  In short, Defendant has not shown that the failure to authenticate the recording affected the outcome of trial. *Cf. Rodriguez*, 398 F.3d at 1300 (explaining that the burden is on the defendant to show that his substantial rights were affected).

Even had Defendant satisfied the first three prongs of the plain-error test, Defendant has not shown that admission of an unauthenticated recording to which he lodged no objection "seriously affects the fairness, integrity or public reputation

9

of judicial proceedings." *Madden*, 733 F.3d at 1320 (quotations omitted) (alteration accepted). As noted, there has been no challenge to the authenticity of the recording, just that the Government failed to go through the steps to authenticate it. Through earlier colloquy about the recording, Defendant and the district court were well aware that a witness was present at trial to authenticate the recorded phone calls. Had defense counsel thought it strategically beneficial to require authentication, he could have insisted that the Government do so prior to admission of the recording. It is Defendant's burden to show that the inherent fairness of the proceedings was compromised by the above events, and we conclude that he has failed to do so. *See Madden*, 733 F.3d at 1320; *see also United States v. Monroe*, 353 F.3d 1346, 1349–50 (11th Cir. 2003) ("Under plain-error review, the silent defendant has the burden to show the error plain, prejudicial, and disreputable to the judicial system." (quotations omitted)).

Accordingly, Defendant's convictions are **AFFIRMED**.